1  Thomas H. Allen, State Bar #11160
   Katherine Anderson Sanchez, State Bar #30051
2  **ALLEN MAGUIRE & BARNES, PLC**
   1850 N. Central Ave., Suite 1150
3  Phoenix, Arizona  85004
   Ofc: (602) 256-6000
4  Fax: (602) 252-4712
   Email   tallen@ambazlaw.com
5          ksanchez@ambazlaw.com

6  Attorneys for Debtor

7

   **UNITED STATES BANKRUPTCY COURT**
8
   **DISTRICT OF ARIZONA**
9

10 In re:                              Chapter 11

11 NELSON JIT, LLC,                    Case No. 2:15-bk-03794-MCW

12          Debtor.                    **SUPPLEMENT TO MOTION FOR**
                                       **APPROVAL OF SALE OF PROPERTY**
13                                     **FREE AND CLEAR OF LIENS AND**
                                       **ENCUMBRANCES PURSUANT TO 11**
14                                     **U.S.C. § 363 WITH CLAIMS TO ATTACH**
                                       **TO SALE PROCEEDS; and, MOTION FOR**
15                                     **ASSUMPTION AND ASSIGNMENT OF**
                                       **COMMERCIAL REAL PROPERTY**
16                                     **LEASE**

17                                     **Hearing Date:    May 7, 2015**
                                       **Hearing Time:    10:30 a.m.**
18                                     **Location:        U.S. Bankruptcy Court**
                                       **                 230 North First Avenue**
19                                     **                 7th Floor, Courtroom 702**
                                       **                 Phoenix, Arizona**
20

21          Nelson  JIT,  LLC  ("Debtor"),  the  Debtor  and  Debtor  in  possession  in  the  above

22 captioned Chapter 11 case, by and through counsel undersigned, hereby files this Supplement to

23 its *Motion for Approval of Sale of Property Free and Clear of Liens and Encumbrances*

24 *Pursuant to 11 U.S.C. § 363 With Claims to Attach to Sale Proceeds; and, Motion for*

25 *Assumption and Assignment of Commercial Real Property Lease* ("Sale Motion").

26          1.      Debtor filed the Sale Motion on April 2, 2015 [Dkt. No. 3].

27          2.      On April 30, 2015, the Court held a hearing to consider the Sale Motion.  The

28 United States Trustee opposed the Sale Motion and argued, among other things, that the newly

appointed unsecured creditors' committee required additional time to analyze the proposed sale and that the Debtor needed to provide additional disclosures to support the proposed sale.

3. At the hearing, the Court directed the Debtor to supplement the record with additional information regarding the assets that will <u>not</u> be sold through the Sale Motion. Attached hereto as **Exhibit A** is a list of Excluded Assets.

4. At the initial hearing on the Sale Motion, the Court indicated that counsel should maintain a contact log of all marketing efforts. The contact log is attached hereto as **Exhibit B**.

5. Article 9.1(d) of the Sale Motion articulates the "Conditions to the Obligations of Buyer." A pertinent condition of Buyer[1] is that the Order approving the Sale include:

> (A) a determination that Buyer is a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code and entitled to the protections of such section; (B) a waiver of the fourteen (14) day stay set forth in Federal Rule of Bankruptcy Procedure 6004(h); and, (C) findings of fact and conclusions of law that the Buyer is not a successor in interest to the Seller or any Affiliate of the Seller.

In the Sale Motion, Debtor requested approval of the sale in accordance with the Asset Purchase Agreement ("APA"), but did not specifically request each discreet item required in Article 9.1(d) of the APA. Debtor now specifically requests that the Sale Order include: (1) a waiver of the 14-day waiting period required by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; (2) a finding that Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m); and (3) specific findings that Buyer is not a successor in interest to the Debtor or any affiliate of Debtor. These requests are appropriate and necessary to allow for a rapid closing of the Sale so that the Debtor's business operations may continue uninterrupted.

6. Debtor and Buyer have entered into the *Addendum to Asset Purchase Agreement dated March 31, 2015* ("Addendum"), attached hereto as **Exhibit C**. The Addendum clarifies the agreement of Buyer and Debtor with respect to certain provisions of the APA.

/ / /

---

[1] Unless otherwise defined herein, capitalized terms will have the same meaning ascribed to them in the Sale Motion.

2

a. <u>Article 2.2 Inventory Adjustment Mechanism</u>: Pursuant to the APA, Buyer was to exercise the option to reduce the Purchase Price pursuant to the Inventory Adjustment Mechanism two days prior to the Sale Hearing, or April 28, 2015. This date has passed and the Parties agree that the Purchase Price will not be reduced.

b. <u>Article 3.1 and 10.1(d) Closing Date and Termination Date</u>: The Parties agree that the Closing Date will occur on or before May 14, 2015. Debtor and Buyer understand that the Closing Date may occur while the Sale Order is still appealable and have addressed this in Article 9.1(d) of the APA.

c. <u>Article 8.2 John Lott Consultant Agreement</u>: As outlined in the APA, John Lott has agreed to a 90-day consulting agreement with Ernest Packaging. A true and correct copy of the Consulting Agreement is attached hereto as **Exhibit D**. Mr. Lott's employment is not a closing condition. If Ernest Packaging is not the highest bidder at the Sale Hearing, the successful bidder, at its own discretion, can either accept, modify, or reject the Consulting Agreement.

d. <u>Article 9.2(i) Certain Employees Hired by Buyer – Greg Nelson and Andrew Vernon</u>: Buyer has agreed to waive this condition. Pursuant to the APA, Buyer was to give notice to Debtor two days prior to the hearing on the Sale Motion if Buyer anticipated that it would not close based on this provision. Mr. Nelson's and Mr. Vernon's employment is not a closing condition.

7. Debtor has determined that the value of the business as a going concern is higher than the liquidation value. The most valuable asset to be sold is Debtor's packaging inventory, a vast majority of which contains proprietary logos. The three qualified bidders who attended the April 30, 2015 sale hearing, only have interest in purchasing the Assets if the Debtor is a going concern. If the company shuts down the inventory will be virtually worthless.

8. The assignment and assumption of the lease agreement requires Debtor to pay a portion of the sale proceeds to the landlord. TAB has consented to this payment from its cash collateral. The landlord has agreed to a $15,000 carve out from its cure amount for the benefit of the bankruptcy estate.

3

9.     Transportation Alliance Bank ("TAB") is the Debtor's largest secured creditor. TAB has a blanket lien on all assets of the Debtor, including those to be sold.  TAB has consented to a release of its liens on the collateral to be sold with its liens to attach to the proceeds.  TAB has agreed to allow Debtor to use its cash collateral to pay the pre-petition arrearage to the landlord in order to allow the lease to be assumed, to pay up to $5,000 in UST fees, and to reserve $25,000 to pay administrative expenses.  Debtor, TAB and the Unsecured Creditors' Committee ("UCC") have come to an agreement as to the distribution of the remaining sale proceeds.

10.     As of May 4, 2015, Debtor has outstanding A/R that has not been assigned to TAB of approximately $256,801.74.  Collection of this asset will be used to fund the Plan after the Sale.  Debtor has confirmed with both Buyer and Victory Packaging that they will collect, account for and segregate the non-TAB A/R on behalf of the Debtor for a period of 60 days after the Sale.[2]  Debtor was unable to communicate with American Machinery Works ("AMW") regarding this issue but anticipates that this issue can be clarified at the hearing.

**WHEREFORE**, based on the foregoing, Debtor respectfully requests that the Court enter an Order allowing the sale to go forward on May 7, 2015 on the terms proposed in the Sale Motion as amended on the record and herein.

DATED: May 6, 2015.

**ALLEN MAGUIRE & BARNES, PLC**

/s/ *THA #11160*
Thomas H. Allen
Katherine Anderson Sanchez
1850 N. Central Ave., Suite 1150
Phoenix, AZ  85004
Attorneys for Nelson JIT, LLC

/ / /

/ / /

/ / /

---

[2]  This obligation will include accounting and segregation only.

4

**E-FILED** on May 6, 2015 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case.

**COPY** mailed the same date via U.S. Mail to:

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ  85003-1706

**COPY** e-mailed the same date to:

Edward K. Bernatavicius
OFFICE OF THE U.S. TRUSTEE
230 N. First Avenue, Suite 204
Phoenix, AZ  85003
edward.k.bernatavicius@usdoj.gov

Don C. Fletcher
LAKE AND COBB, P.L.C.
1095 W. Rio Salado Pkwy., Suite 206
Tempe, AZ  85281
dfletcher@lakeandcobb.com
*Attorneys for Preferred Packaging and Crating, Inc.*

Andrew Hardenbrook
Troy Aramburu
SNELL & WILMER
400 E. Van Buren
Phoenix, AZ  85004-2202
ahardenbrook@swlaw.com
taramburu@swlaw.com
*Attorneys for TAB Bank*

Randy Nussbaum
NUSSBAUM GILLIS & DINNER, P.C.
14850 N. Scottsdale Road, Suite 45o
Scottsdale, AZ  85254
rnussbaum@ngdlaw.com
*Attorneys for American Machinery Works*

Chad L. Schexnayder
JENNINGS HAUG & CUNNINGHAM
2800 N. Central Avenue, Suite 1800
Phoenix, AZ  85004-1049
cls@jhc-law.com
*Attorneys for Epicore 21*

Frank Calaba
2600 W. Olive Avenue, 5th Floor
Burbank, CA  91505
frank.calaba@sbcglobal.net
*Attorney for Ernest Packaging Solutions*

5

James Reynolds
TIFFANY & BOSCO PA
2525 E. Camelback Road, 7th Floor
Phoenix, AZ  85016
jwr@tblaw.com
*Attorneys for Greg Nelson*

Kelly E. Singer
QUARLES & BRADY, LLP
Two N. Central Avenue
Phoenix, AZ  85004-2391
kelly.singer@quarles.com
*Attorneys for the Official Unsecured*
  *Creditors' Committee*

James B. Ball
POLI & BALL PLC
2999 N. 44th Street, Suite 500
Phoenix, AZ 85018-7252
ball@poliball.com
Attorneys for Harrison Properties, LLC

John Lott
4022 W. Turney Avenue, Suite 3
Phoenix, AZ  85019
jlott@nelsonjit.com


/s/ *Misty Vasquez*

6

# Exhibit "A"

## EXCLUDED ASSETS

| EXCLUDED ASSETS | LIENED/LEASED | POTENTIAL VALUE |
|---|---|---|
| CASH ON HAND (petition date) | | $700.00 |
| FUNDS IN BANK ACCOUNTS (petition date) | | $173,515.03 |
| SECURITY DEPOSITS | | $28,228.80 |
| ACCOUNTS RECEIVABLE (petition date) | | $161,734.80 |
| INSURANCE CLAIM | | $10,000.00 |
| TELEPHONE HARDWARE | | $200.00 |
| SHORETEL PHONE EQUIPMENT | LEASED | $0.00 |
| 2009 INTL PROSTAR 13 SPEED TRACTOR | LEASED | $0.00 |
| 2007 INTL 4300 DT466 | LEASED | $0.00 |
| 27' TRAILER #201 | | $500.00 |
| 50' TRAILER #202 | | $4,200.00 |
| 1998 GREAT DANE TRAILER #205 | | $2,000.00 |
| 1998 FREIGHTLINER #111 | | $500.00 |
| WABASH/DURAPLATE TRAILER #2116 | | $2,000.00 |
| HAULRITE FLATBED #107 | | $2,500.00 |
| 2006 INTERNATIONAL TRUCK #116 | | $5,000.00 |
| 2001 TRAILER # 208 | | $3,000.00 |
| 2008 INTERNATIONAL TRUCK # 117 | | $2,500.00 |
| 2008 INTERNATIONAL TRUCK # 118 | | $2,500.00 |
| 2007 CHEVY SILVERADO | | $5,000.00 |
| 2007 INTERNATIONAL TRUCK #119 | | $5,000.00 |
| 2007 INTERNATIONAL TRUCK #120 | | $2,500.00 |
| 2007 INTERNATIONAL TRUCK #121 | | $2,500.00 |
| 2000 INTERNATIONAL TRUCK #122 | | $5,000.00 |
| UTILITY TRAILER #209 | | $1,500.00 |
| 2003 FREIGHTLINER | | $2,500.00 |
| FIREKING 31.5" | | $200.00 |
| SURVEILLANCE CAMERAS | | $100.00 |
| PONTOTOC BAND SAW | | $200.00 |
| 17" BAND SAW | | $200.00 |
| WAREHOUSE SCALE | | $50.00 |
| COMPRESSOR | | $300.00 |
| FORKLIFTS AND REACH LIFTS | | $69,500.00 |
| P21 DATABASE | LEASED | $0.00 |
| KONICA/MINOLTA COPY MACHINE-SCANNER | LEASED | $0.00 |
| INVENTORY GREATER THAN 1 YEAR OLD | | $56,839.00 |
| SALT LAKE INVENTORY | | $7,173.60 |
| DENVER INVENTORY | | $5,245.60 |
| **TOTAL VALUE OF EXCLUDED ASSETS BEFORE TAB'S BLANKET LIEN:** | | **$562,886.83** |

# Exhibit "B"

# Contact Log
## Re: Nelson JIT, LLC Sale

| Company | Contact Person | Action Taken |
|---------|----------------|--------------|
| Acorn Paper | David Weisberg and Randy Seff | Emails to and from Acorn beginning 04/07/15 re sale. Emailed the Sale Motion and Order Approving Bidding Procedures on 04/09/15. |
| Masterbox | Fred Peterson | Emails to and from Fred Peterson at Masterbox on 04/09/15 re sale. |
| Victory Packaging | Sean Huggins | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures. Phone calls to and from Victory on 04/21/15. Letter sent on 04/21/15 enclosing the Sale Motion, Order Approving Bidding Procedures, and Schedules. Nondisclosure sent 04/21/15. Dropbox sent 04/24/15. |
| AMW - American Machinery Works) | Randy Nussbaum and Chuck Farguson | Email from Randy Nussbaum, counsel for AMW, beginning 04/14/15. Letter sent on 04/14/15 enclosing the APA. Nondisclosure sent 04/17/15. Letter of Intent signed on 04/22/15. |
| Continental Western | Rick Oshay | Emails to and from Oshay beginning 04/15/15. Letter sent on 04/15/15 enclosing the Sale Motion, Order Approving Bidding Procedures, and Schedules. Nondisclosure sent 04/21/15. Dropbox sent 04/21/15. |
| Ernest Packing | Mike Pichotta Greg Nelson Tim Wilson | Email to and from Ernest beginning 04/14/15 re sale. |
| Western Packing | | Telephone calls and emails to and from Western Packing beginning 04/15/15 re sale. |
| Alden Equity | | Emails to and from Alden Equity on 04/22/15 re possible purchase of assets |

| | | |
|---|---|---|
| International Paper | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| RockTenn | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| PCA/Tharco | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Georgia Pacific | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Landsberg Orora | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Unisource | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Uline | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Xpedx | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| SupplyOne | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Preferred Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Sound Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Tucson Container | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Canyon State Box & Container | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| ACE Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Allied Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Pioneer Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |

| | | |
|---|---|---|
| Cactus Container | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Nu-Way Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Propak | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |
| Astro Packaging | | Letter sent on 04/10/15 enclosing the Order Approving Bidding Procedures |

# Exhibit "C"

## ADDENDUM TO ASSET PURCHASE AGREEMENT DATED MARCH 31, 2015

Nelson J.I.T. LLC, an Arizona limited liability company, debtor and debtor in possession in bankruptcy case number 2:15-bk-03794-MCW ("Seller") and Ernest Packaging, a California corporation ("Buyer") hereby agree to the following revisions to the Asset Purchase Agreement dated March 31, 2015 ("APA"):

1.       Buyer agrees to remain the "stalking horse" bidder for the continued sale hearing scheduled for May 7, 2015 at 10:30 a.m.

2.       <u>Article 2.2 Adjustment Mechanism</u>:  As of April 28, 2015, the aggregate Inventory had not decreased by more than twenty percent (20%).  No adjustment will be made to the Purchase Price.

3.       <u>Article 3.1 Closing Date</u>:  The Parties agree to extend the date that the Closing must occur to on or before May 14, 2015.  The Parties agree that the Closing may occur before the Sale Order is a final order, and that the Sale Order will include the language in Article 9.1(d) of the APA.

4.       <u>Article 9.2(i) Certain Employees Hired by Buyer</u>:  Buyer waives this condition.

5.       <u>Article 10.1(d) Termination</u>:   The Parties agree to extend the date that the Closing must occur to on or before May 14, 2015.

**BUYER:**                                          **SELLER:**

ERNEST PACKAGING                    NELSON J.I.T. LLC


By: _____        By: _____
       Mike Pichotta, VP of Operations               John J. Lott, CEO

# Exhibit "D"

**CONSULTING AGREEMENT**

      This Consulting Agreement ("this **Agreement**") is made and entered into as of March _11th_ 2015, by and between ERNEST PACKAGING, a California corporation (the "**Company**"), and JOHN J. LOTT ("**Consultant**") with reference to the following facts:

**WITNESSETH:**

     A.    Consultant is _____ _CEO_ _____ [describe     position]    at NELSON J.I.T LLC, an Arizona limited liability company ("**Nelson J.I.T.**");

     B.    Nelson J.I.T. operates _Packaged distribut___ [describe business];

     C.    Nelson J.I.T. has agreed to sell certain assets constituting its industrial packaging supply business to Company pursuant to that certain Asset Purchase Agreement (the "**Asset Purchase Agreement**") dated March __, 2015 by and between Nelson J.I.T. LLC as Seller and Ernest Packaging as Buyer;

     D.    Company desires to engage Consultant to advise it on servicing former customers of Nelson J.I.T., to assist in the transition of the Nelson J.I.T business to Company and to utilize the experience and business contacts of Consultant that the Company believes will contribute to the Company's success with the purchased assets; and

     E.    Consultant desires to be engaged by the Company upon the terms and conditions contained herein;

     NOW, THEREFORE, in consideration of the mutual promises herein contained, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Company and Consultant agree as follows:

     1.    <u>Term of Agreement</u>. The Company hereby agrees to retain Consultant as a consultant, and Consultant hereby agrees to be retained by the Company, upon the terms and subject to the conditions hereof for the ninety (90) day period commencing on the first Business Day following the "Closing Date" as such term is defined in the Asset Purchase Agreement, unless earlier terminated pursuant to <u>Section 5</u> hereof. After such ninety (90) day period engagement of Consultant shall be on a month-to-month basis.

     2.    <u>Consulting Fee/Independent Contractor</u>.

         (a)    The Company shall pay Consultant a consulting fee of $12,500 a month, _Payable The_ _15th of every month_

         (b)    Consultant shall perform the consulting services described in <u>Section 3</u> hereof as an independent contractor without the power to bind or represent the Company for any purpose whatsoever. Consultant shall not, by virtue of being a consultant hereunder, be eligible to receive any employee benefits for which officers or other employees of the Company are eligible at any time. Consultant hereby acknowledges his separate responsibility for all federal and state withholding taxes, Federal Insurance Contribution Act taxes, Medicare taxes and workers' compensation and unemployment compensation taxes, if applicable, and agrees to indemnify and hold the Company harmless from any claim or liability therefore.

     3.    <u>Services</u>. Consultant will consult with the President of the Company and such other Company personnel as the President may direct. Consultant shall determine the method, details and means of performing the consulting services and will consult during such hours and on such days that Consultant, in his sole discretion, deems necessary to provide such services.

Case 2:15-bk-03794-MCW   Doc 48   Filed 05/06/15   Entered 05/06/15 18:11:56   Desc
Main Document    Page 16 of 18

4.     Business Expenses and Reimbursements. Consultant shall be entitled to reimbursement from the Company for ordinary and necessary business expenses incurred by Consultant in the performance of his duties, provided such expenses are determined and approved by the Company in writing in advance of incurring same, and further provided that each such expense is of a nature qualifying it as a proper deduction on the federal and state income tax returns of the Company as a business expense and not as deductible compensation to Consultant.

5.     Termination. During the ninety (90) day term, Company may terminate this Agreement on thirty (30) days' notice without liability for any remaining consulting fees if Consultant violates any law or Company policy, is disloyal or dishonest or acts in bad faith toward Company, has been grossly derelict in the performance of his duties or responsibilities, or has breached the provisions of Section 6. After such ninety (90) day term, Company or Consultant may terminate this Agreement for any reason upon thirty (30) days' notice.

6.     Confidentiality. Consultant agrees to maintain in strict confidence all confidential information that he receives in the course of providing consulting services or otherwise in connection with his relationship with the Company and will use confidential information only for the specific purposes of performing his obligations under this Agreement.

7.     Miscellaneous.

(a)     This Agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes all other negotiations, understandings and representations, if any, made by and between such parties. Each of the parties hereto agrees that they have received independent advice and counseling concerning the preparation of this Agreement and the terms and conditions herein contained.

(b)     The provisions of this Agreement may not be amended, supplemented, waived or changed orally but only by a writing signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought and making specific reference to this Agreement.

(c)     All of the terms and provisions of this Agreement, whether so expressed or not, shall be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without the prior written consent of the other party, nor is this Agreement intended to confer upon any other person or entity except the parties hereto any rights or remedies hereunder. Notwithstanding the foregoing, Company may assign its rights, interests or obligations in whole or in part to a wholly-owned subsidiary, without the prior consent of Consultant; provided, however, any such assignment by Company to such subsidiary shall not relieve Company of any obligation under this Agreement.

(d)     All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or electronic mail (and no notice of failure of delivery was received within a reasonable time after such message was sent) or (iii) one Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses, facsimile numbers and e-mail addresses (or to such other address, facsimile number or e-mail address as a Party may have specified by notice given to the other party pursuant to this provision): in the case of (a) the Company, Attention: President: by Mail: Ernest Packaging, 5777 Smithway St., Commerce, CA 90040, by Fax: (323) 589-2794, by E-mail: Twilson@ ernestpkg.com, and

ERN2-43.002 (Draft of 03-11-15)

2.

(b) Consultant, to the address, fax or e-mail address set forth below his name on the signature page hereof.

(e) The headings contained in this Agreement are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Agreement.

(f) The failure or delay of any party at any time to require performance by another party of any provision of this Agreement, even if known, shall not affect the right of such party to require performance of that provision or to exercise any right, power or remedy hereunder, and any waiver by any party of any breach of any provision of this Agreement should not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement. No notice to or demand on any party in any case shall, of itself, entitle such party to any other or further notice or demand in similar or other circumstances.

(g) If any legal action or other proceeding is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover all expenses taxable as court costs, including without limitation, reasonable attorneys' fees (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

(h) No remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

(i) This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona without regard to principles of conflicts of laws.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

COMPANY:

ERNEST PACKAGING

By: _____
Timothy G. Wilson, President

CONSULTANT:

_____
JOHN J. LOTT
Address: 8650 N. Wilkinson Road
Paradise Valley, AZ 85253
Fax: (   )
E-mail: lottj@gmail.com

ERN2-43.002 (Draft of 03-11-15)

3.